RECEIVED
SEP - 5 2013
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| LUV N' CARE, LTD. | : | DOCKET NO. 3:11-1878 |
| VS. | : | JUDGE TRIMBLE |
| ANGEL JUVENILE PRODUCTS, ET AL | : | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the court is "Defendants', Lerado Group (Holding) Company Limited and Lerado Group Limited, Motion to Dismiss for Lack of Personal Jurisdiction" (R. #65) wherein the mover defendants seek to be dismissed from the instant lawsuit for lack of personal jurisdiction. Defendants, Lerado Group Holding ("LGH") and Lerado Group (Holding) Company Limited ("LGHCL"), maintain that the constitutional due process requirements for the exercise of personal jurisdiction are not met in this case.

## STATEMENT OF THE CASE

In its complaint, as amended[1], plaintiff asserts a breach of contract claim which arises from Plaintiff's Distribution Agreements with Defendant Angel Juvenile Products ("AJP") and Peaceful Trust Co.,Ltd. Plaintiff added defendants LGH and LGHCL[2] under the "single business enterprise" doctrine.[3] The amended complaint expressly states that "[t]his Court has personal jurisdiction over

---

[1] R. #44.

[2] In its amended complaint, plaintiff added nine additional plaintiffs which it alleges are all either an instrumentality or adjunct of each other, and/or are alter-egos.

[3] Id.,

Defendants pursuant to the terms and conditions of the Distribution Agreements, which provides that all parties consent to the jurisdictions, *inter alia,* of the state and federal courts in Louisiana."

Plaintiff, LNC, is a corporation incorporated under the laws of the state of Louisiana with its principal place of business in Monroe, Louisiana. LGL is a corporation organized and existing under the laws of China and/or Hong Kong; it has a principal office and place of business in China and/or Hong Kong. LGHCL is a corporation organized and existing under the laws of China and/or Hong Kong; it also has a principal office under the laws of China and/or Hong Kong.

Plaintiff alleges that Chief Officer and/or Chariman Henry Huang controlled LGL and other Lerado entities insomuch that he dictated what entity signed what documents or agreements. Plaintiff further alleges that during the negotiations that led to the execution of the two Distribution Agreements which are the subject of this lawsuit, Henry Huang controlled all of the named and proposed named entities and/or controlled the dealings with plaintiff. Plaintiff specifically makes the following additional allegations:

In the summer of 2000, the Lerado Group began negotiations with plaintiff to make molds. In August of 2002, plaintiff and AJP and Peaceful Trust Co. LTD ("PTCL") (which are not part of the Lerado Group per se) signed Distribution Agreements at Mr. Huang's direction to distribute baby products in China. The launch date for the Distribution Agreements was July 1, 2002 and the term of the Agreements was for five years. On or about February 10, 2003, plaintiff received a fax from Henry Huang informing it that AJP had changed its name to Shanghai Wexin Juvenile Co. ("SWJC") and that SWJC would be responsible for AJP's obligations under the contract.

The Agreements set out the amount of minimum sales for each year and the rate of commission (royalty) rate owed by AJP (changed to SWJC) and PTCL. Defendant(s) never

purchased products from LNC, thus plaintiff alleges that they owe the entire balance of obligated purchases in the amount of $28,700,000 resulting in $1,722,000 in lost commissions owed to plaintiff. Plaintiff alleges that Defendants failed to pay what was owed under the terms of the Agreements. Thus, plaintiff alleges that defendants made and sold "copycat products of Plaintiff"[4] with which Plaintiff asserts it is entitled to a judgment award of $1,722,000.

At some point in time, LGL orally agreed to make a mold for a baby product for plaintiff; plaintiff paid LGL $100,000.00 to develop and create the mold. However, LGL did not make a mold that worked, nor did LGL return the money.   Plaintiff alleges that all defendants owe damages to LNC under Louisiana's "single business enterprise doctrine."

## LAW AND ARGUMENT

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.[5]

To exercise personal jurisdiction over a non-resident defendant, the non-resident defendant must be amenable to service of process under the law of the forum state, and the exercise of jurisdiction under state law must comport with the Due Process Clause of the Fourteenth Amendment.[6] If the forum state has enacted a long arm statute that extends to the limits of due

---

[4] R. #1. Complaint, ¶ 8.

[5] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

[6] Stuart v. Spademan, 772 F.2d 1185 (5th Cir. 1985).

process,[7] the Court need only determine whether the assertion of jurisdiction over the non-resident would be constitutionally permissible under the Due Process Clause.[8] The requirements of the Due Process Clause are satisfied if a non-resident's contacts with the forum state show that he has "purposefully avail[ed] himself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws."[9] A non-resident's conduct and connection with the forum state must illustrate that "he should reasonably anticipate being haled into court in the forum state."[10]

Where a defendant has substantial and "continuous and systematic" contacts with a forum state, the court may exercise "general" jurisdiction over the defendant,[11] referred to as having a business presence in the forum state.[12] In the absence of general jurisdiction, a court may exercise "specific" jurisdiction which requires that (1) the defendant has minimum contacts with the forum state; (2) the plaintiff's cause of action arises out of or results from the defendant's contacts with the forum ; and (3) the exercise of personal jurisdiction is fair and reasonable.[13]

Defendants, LGL and LGHCL, maintain that they are foreign investment holding companies which are located, operating and doing business outside of the state of Louisiana and outside of the

---

[7] Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 624 (5th Cir. 1999).

[8] Stuart, 772 F.2d 1185, 1190.

[9] Id.

[10] Id.

[11] Helicopteros Nacionales de Colobia, S.A. v. Hall, 466 U.S. 408, 415 (1984).

[12] Jackson v. Tanfoglio Giuseppe, S.R.L., 615 F.3d 579, 584 (5th Cir. 2010) citing Walk Haydel & Assoc. v. Coastal Power Produ. Co., 17 F.3d 235, 242-43 (5th Cir. 2008).

[13] Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006).

United States. Defendants assert that LGL is a wholly owned subsidiary of LGHCL. LGL is located in both the British Virgin Islands and in Hong Kong. Thus, it is not licensed to do business, nor does it allegedly do business in the state of Louisiana. LGL and LGHCL remark that they are not parties to the Distribution Agreements, nor have they entered into any agreements with plaintiff. LGL asserts that it does not market or advertise in Louisiana; it does not maintain an office in Louisiana; it does not have any officers, managers, directors, shareholder or employees in Louisiana; and finally, it does not pay taxes to the state of Louisiana.

LGHCL asserts that is does not do business in the state of Louisiana, nor is it licensed to do business, market or advertise in Louisiana. LGHCL has no offices, officers, managers, directors, shareholders or employees in Louisiana, and it does not pay taxes to the state of Louisiana.

Defendants LGL and LGHCL maintain that the court would offend traditional notions of fair play and substantial justice in contravention of the Louisiana long-arm statute and the Due Process Clause of the Fourteenth Amendment if the court exercised jurisdiction over them. Consequently, they argue that they must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because there is no relationship between the state of Louisiana and LGL and LGHCL, and because neither of these defendants have purposefully availed themselves of the benefits and protections of Louisiana by establishing minimum contacts with the states.

Defendants, LGL and LGHCL, further maintain that the court may not exercise specific jurisdiction over them because neither defendant previously had or currently has any contact with the state of Louisiana nor any connection to the instant litigation. Defendants reiterate that they were not parties to the Distribution Agreements. Defendants remark that plaintiff is relying on the corporate disclosure statements filed by AJP which states that AJP is a wholly owned subsidiary of

5

Lerado Industrial Limited, which is wholly owned by Lerado Group Limited which is a wholly owned subsidiary of Lerado Group Holding. Defendants remark that plaintiff's oral contract to make molds (pacifiers) was not with LGL, but was with Shanghai Lerado Daily Article Limited. Hence, defendants assert that the court lacks *in personam* jurisdiction over them.

Finally, defendants maintain that plaintiff cannot rely on the single business enterprise theory to argue that they are subject to the jurisdiction of the court. Defendants note that in Louisiana, the single business enterprise theory must be proven by clear and convincing evidence. Defendants argue that plaintiff has failed to prove that LGHLC and LGL are subject to the jurisdiction of the court.

Plaintiff relies upon Louisiana's Single Business Enterprise Doctrine to subject defendants to the jurisdiction of the court. Under this doctrine, liability is imposed "where two or more business entities act as one. Generally, . . . , when corporations integrate their resources as operations to achieve a common business purpose, each business may be held liable for the wrongful acts done in pursuit of that purpose."[14] The "legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation. If one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter from liability.[15]

In its reply, plaintiff suggests that more discovery is needed to determine the connection between the various business entities. Plaintiff complains that defendants have failed to produce requested discovery such as evidence of name changes, including but not limited to correspondence,

---

[14] Brown v. ANA Ins. Group., 994 So.2d 1265, 1267 (La. 10/14/2008).

[15] Green v. Champion Ins. Co., 577 So.2d 249 (3/5/1991) citing Lucey Manufacturing Corp. v. Oil City Iron Works, 131 So. 57 (La.App. 2nd Cir. 1930).

6

minutes and resolutions of board meetings. Plaintiff further complains that it has been unable to depose certain key witnesses such as Mr. Huang, and that AJP produced nothing in compliance with plaintiff's requests. Plaintiff has submitted emails, letters and responses to interrogatories and admissions which raises questions as to the connection between the various legal entities. Thus, the evidence is used to support plaintiff's position that the court should apply the single business enterprise theory to the defendants and subject them to the jurisdiction of the court.

Plaintiff remarks that some discovery clearly shows an interwoven business of the entities in question. Specifically, that AJP transferred its rights to Shanghai Wenxin Juvenile Co. and that Shanghai Lerado Daily Article Limited "via Lerado China Ltd." was responsible for making the mold which forms a part of plaintiff's claims. Plaintiff notes and submits evidence that almost all dealings between LNC and AJP were on Lerado Overseas LTD stationery.[16] Plaintiff submits evidence of discussions about the molds at issue between "Daniel Wang Lerado Group" and plaintiff.[17] Plaintiff asserts that AJP, in its response to plaintiff's interrogatories 5 and 7 would neither admit nor deny that it received $100,000 from plaintiff. Plaintiff further produces evidence regarding name changes which demonstrates contradictions in AJP's responses to interrogatories.[18]

Plaintiff also submits a letter from Daniel Wang wherein he comments "about the molds and Lerado and the power of Henry Huang on all of the entities, also advising that Henry will take such steps to 'wipe' out LNC in the China market, and while referring to the Lerado Group, he states, "[p]lease remember that nobody in Lerado dare to make a wrong move without Henry's or his wife's

---

[16] Plaintiff's exhibits 6, 8, 10, 11.

[17] Plaintiff's exhibit 7.

[18] Plaintiff's exhibit 13.

7

instruction and permission."..."please remember that Henry is the Board."[19]

Based on the evidence submitted, the court is convinced that it would be premature to dismiss these two defendants.

## CONCLUSION

For the reasons set forth above, the court will deny the motion to dismiss.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 5th day of September, 2013.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[19] Plaintiff's exhibit 14.